1

```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2
     - - - - - - - - - - - - - - X
3
     UNITED STATES OF AMERICA,      : 20-CR-00454(SJ)(CLP)
4                                   :
                                    :
5                                   :
          -against-                 : United States Courthouse
6                                   : Brooklyn, New York
                                    :
7                                   :
                                    : Friday, April 30, 2021
8    JEREMY TRAPP,                  : 9:00 a.m.
                                    :
9              Defendant.           :
                                    :
10   - - - - - - - - - - - - - - X

11             TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
12            BEFORE THE HONORABLE CHERYL L. POLLAK
                 UNITED STATES MAGISTRATE JUDGE
13
                      A P P E A R A N C E S:
14
     For the Government:  MARK J. LESKO, ESQ.
15                        Acting United States Attorney
                          Eastern District of New York
16                        271 Cadman Plaza East
                          Brooklyn, New York 11201
17                     BY:  SARA K. WINIK, ESQ.
                          Assistant United States Attorney
18

19    For the Defendant:   FEDERAL DEFENDERS OF NEW YORK, INC.
                          One Pierrepont Plaza
20                        16th Floor
                          Brooklyn, New York 11201
21                     BY:ASHLEY M. BURRELL, ESQ.

22

23
     Court Reporter:  Stacy A. Mace, RMR, CRR, RPR, CCR
24                     Official Court Reporter
                       E-mail:  SMaceRPR@gmail.com
25   Proceedings recorded by computerized stenography.  Transcript
     produced by Computer-aided Transcription.
```

Proceedings - Via Videoconference                    2

1                        (In open court.)

2              (All participants via videoconference.)

3            (Magistrate Judge CHERYL L. POLLAK presiding.)

4              THE COURTROOM DEPUTY:  This is the matter of United

5    States versus Jeremy Trapp, case number 20-CR-454 and

6    20-CR-308.  This is a criminal cause for a pleading.

7              For the record, it is 9:02 a.m. on April 30th, 2021.

8              Counsel, please state your appearances for the

9    record.

10             MS. WINIK:  Good morning, Your Honor.

11             Sara Winik and Francisco Navarro for the United

12   States.

13             THE COURT:  Good morning.

14             MS. BURRELL:  And on behalf of Mr. Trapp, this is

15   Ashley Burrell for the Federal Defenders.

16             Good morning, Your Honor.

17             THE COURT:  Good morning.

18             Good morning, Mr. Trapp.  I take it that you

19   understand English?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Okay.  Yes, you are going to have to get

22   a little closer to the computer so I can hear you.

23             If at any point something is said that you don't

24   understand, please let me know.

25             Okay?

1      THE DEFENDANT:  Yes, Your Honor.

2      THE COURT:  Okay.

3      The first issue I want to deal with this morning is

4  your consent to proceed by way of this video conference.

5      THE DEFENDANT:  Yes.

6      THE COURT:  Normally, we would all be in the

7  courthouse.  You would be there, Ms. Burrell would be there,

8  the Government's attorneys would be there, and I would be

9  there as well, but because the COVID pandemic is still out

10 there, the number of proceedings in the courthouse are limited

11 at this point in time.  So, under The Cares Act we are

12 permitted to proceed with this guilty plea if you, the

13 defendant, agree to go forward and there is a finding that it

14 is necessary to proceed at this time.

15      So, first off, Ms. Burrell, have you explained all

16 of this to Mr. Trapp?

17      MS. BURRELL:  Yes, I have, Your Honor.

18      THE COURT:  And does he consent to proceed by way of

19 video conference today?

20      MS. BURRELL:  He does.

21      THE COURT:  All right.  And the reason that we need

22 to do this today is what?

23      MS. BURRELL:  Yes, based -- yes, there is, Your

24 Honor.

25      Based on Mr. Trapp's relatively low guidelines and

Proceedings - Via Videoconference                    4

1   the fact that he's already served some time and we anticipate

2   requesting a time served sentence at sentencing, we are

3   requesting that we move forward on this case.

4              THE COURT:  All right, and the Government has no

5   objection, I am assuming?

6              MS. WINIK:  Yes, Your Honor, that's correct.

7              THE COURT:  Okay.

8              All right, so I will make the necessary finding that

9   the defendant has consented and that the proceeding is

10  appropriate to go forward today given the current pandemic and

11  also, the need to get the guilty plea done so that we can

12  determine whether there is a time served sentence.  So, we

13  need to move quickly on this.

14             So, the next issue I want to deal with, Mr. Trapp,

15  is your consent to have me hear your plea.

16             You understand that this is Judge Johnson's cases; I

17  guess these are both now Judge Johnson's cases.

18             Is that correct, the second one was transferred from

19  Judge Donnelly to Judge Johnson?

20             MS. WINIK:  That's correct, Your Honor.

21             THE COURT:  Okay, so these cases are before District

22  Judge Sterling Johnson, and he is the judge who will sentence

23  you and who will make the ultimate decision as to whether or

24  not to accept your plea of guilty.

25             If you wish, you have the absolute right to have

Proceedings - Via Videoconference                    5

1   Judge Johnson hear your plea; and if you choose to do that,

2   there will be no prejudice to you.

3           On the other hand, if you wish I will hear your plea

4   this morning and a transcript will be made by the court

5   reporter, who you see there, and that transcript will be given

6   to Judge Johnson to review at the time of your sentence and

7   when he makes his decision as to whether or not to accept your

8   plea of guilty.

9           Do you wish to give up your right to have Judge

10  Johnson hear your plea and proceed instead before me this

11  morning?

12          THE DEFENDANT:  (No response.)

13          THE COURT:  Do you understand the question?

14          MS. BURRELL:  Do you understand it?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Do you agree to have me hear your plea

17  this morning?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Okay, thank you.

20          Do you make this decision voluntarily and of your

21  own free will?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Has anyone made any threats or promises

24  to get you to agree to have me hear your plea?

25          THE DEFENDANT:  Yes, Your Honor.

Proceedings - Via Videoconference                6

1          MS. BURRELL:  No.  Has anyone threatened you to have

2    this judge hear your plea?

3          THE DEFENDANT:  (Inaudible.)

4          MS. BURRELL:  Okay, so say no a little louder.

5          THE DEFENDANT:  No.

6          THE COURT:  All right.

7          And I believe there was a consent form signed and

8    filed.

9          MS. BURRELL:  That's correct, Your Honor.

10         THE COURT:  All right.

11         So, now, Mr. Trapp, before I can hear your plea,

12   there are a number of questions that I must ask you to ensure

13   that it is a valid plea.

14         Again, if you don't understand my question, I'll

15   rephrase it for you.  Okay, just let me know.  Okay?

16         THE DEFENDANT:  Yes.

17         THE COURT:  All right.  So, Mr. Trapp, would you

18   raise your right hand, please?

19         Do you solemnly swear that the answers you are about

20   to give this Court in this proceeding will be the truth, the

21   whole truth, and nothing but the truth, so help you God?

22         THE DEFENDANT:  Yes, I swear.

23         THE COURT:  All right, you can put your hand down.

24         All right, you understand that having been sworn,

25   your answers to my questions will be subject to the penalties

1    of perjury or making a false statement if you don't answer

2    them truthfully.

3              Do you understand that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  What is your full name?

6              THE DEFENDANT:  Jeremy Trapp.

7              THE COURT:  And how old are you, sir?

8              THE DEFENDANT:  25.

9              THE COURT:  Okay.  How far did you go in school?

10             THE DEFENDANT:  I finished high school.  I didn't

11   finish college.

12             THE COURT:  Okay, how many years of college did you

13   complete?

14             THE DEFENDANT:  About a year-and-a-half.

15             THE COURT:  Okay.

16             Have you had any problems communicating with

17   Ms. Burrell, your attorney?

18             THE DEFENDANT:  No.

19             THE COURT:  Okay.

20             Counsel, have you had any problems communicating

21   with Mr. Trapp?

22             MS. BURRELL:  No, I haven't had any problems, Your

23   Honor.

24             THE COURT:  Thank you.

25             Mr. Trapp, are you presently or have you recently

Proceedings - Via Videoconference                    8

1    been under the care of either a physician or a psychiatrist?

2              Have you seen a doctor or a psychiatrist recently?

3              THE DEFENDANT:  No.

4              THE COURT:  No.

5              MS. BURRELL:  A little louder.

6              THE DEFENDANT:  No.

7              THE COURT:  All right.  In the last twenty-four

8    hours, have you taken any narcotic drugs?

9              THE DEFENDANT:  Narcotic drugs, no.

10             THE COURT:  Okay.  Any medicine or pills of any kind

11   in the last twenty-four hours?

12             THE DEFENDANT:  Yes, I take a medication -- it's a

13   medication I take for -- it's a medication that I take for

14   sleeping pills, but I don't know the name of it, Your Honor.

15   I'm sorry.

16             THE COURT:  And you took it when, last night?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Okay.

19             Does it affect your ability this morning to think

20   clearly?

21             THE DEFENDANT:  No.

22             THE COURT:  Okay.

23             Have you had any alcohol to drink in the last

24   twenty-four hours?

25             THE DEFENDANT:  Absolutely not, Your Honor.

Proceedings - Via Videoconference                    9

1          THE COURT:  Okay.  Have you ever been hospitalized

2    or treated for narcotics addiction?

3          THE DEFENDANT:  No.

4          THE COURT:  Okay.

5          Have you ever been treated for any mental or

6    emotional problems?

7          THE DEFENDANT:  No.

8          THE COURT:  As you sit here before me today, is your

9    mind clear?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you understand what we are doing here

12    today?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Okay.

15          All right, Ms. Burrell, have you discussed the

16    matter of pleading guilty with your client?

17          MS. BURRELL:  Yes, I have, Your Honor.

18          THE COURT:  Okay.

19          MS. BURRELL:  To clarify for the record, Mr. Trapp

20    has seen a counselor in the past and is currently receiving

21    mental health treatment through Pretrial Services.

22          THE COURT:  Okay.

23          So, Mr. Trapp, you are seeing a counselor.  Has he

24    prescribed any drugs or medicine for you in connection with

25    that treatment?

Proceedings - Via Videoconference                 10

1          THE DEFENDANT:  Yes, I have.  Yes, I have, Your

2    Honor, just medicine, no narcotic drugs.

3          THE COURT:  Okay.  What is the medicine?

4          Is that the sleeping medicine that you talked about

5    a minute ago?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Okay.  Anything else?  Just that?

8          THE DEFENDANT:  Just that, nothing else.

9          THE COURT:  Okay.  And otherwise, you just talk to

10   him on a regular basis?

11         THE DEFENDANT:  Yes, yes.

12         THE COURT:  Okay, all right, thank you.

13         Thank you, Ms. Burrell, for clarifying that.

14         So, Ms. Burrell, you said you've discussed the

15   matter with your client.

16         Does he understand the rights that he will be

17   waiving by pleading guilty here?

18         MS. BURRELL:  Yes, does.

19         THE COURT:  And is he capable of understanding the

20   nature of these proceedings?

21         MS. BURRELL:  Yes, he is, Your Honor.

22         THE COURT:  All right, do you have any doubt as to

23   his competence to plead at this time?

24         MS. BURRELL:  No, I do not.

25         THE COURT:  Have you advised him of the maximum

1  sentence and the fine that can be imposed as a result of his

2  plea here?

3          MS. BURRELL:  Yes, I have.

4          THE COURT:  And have you discussed with him the

5  operation of the sentencing guidelines in this case?

6          MS. BURRELL:  Yes, I have, Your Honor.

7          THE COURT:  All right.  So, you can switch back now

8  because I am going to talk to Mr. Trapp.

9          So, Mr. Trapp, you understand that you are charged

10  with two felony charges that we are going to be discussing

11  today and that you have the right to be represented by an

12  attorney in connection with these charges?

13          Do you understand that?  Right?

14          THE DEFENDANT:  Yes, Your Honor, I understand that.

15          THE COURT:  Okay, thank you.

16          Have you had enough time to discuss your case with

17  Ms. Burrell?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  And are you satisfied to have her

20  represent you?

21          THE DEFENDANT:  Yes, I do, Your Honor.

22          THE COURT:  Okay.

23          Now, I don't have paper copies of the Indictments in

24  front of me, but there are two Indictments.

25          The first one has the docket number of 20-CR-308.

Proceedings - Via Videoconference                    12

1      Have you received a copy of this Indictment,

2  Mr. Trapp?

3           THE DEFENDANT:  Yes, I am -- yes, I do.

4           THE COURT:  Okay.  My understanding is that you seek

5  to plead guilty to Count One of this Indictment, is that

6  correct, everyone?

7           MS. WINIK:  Yes, Your Honor.

8           MS. BURRELL:  That's correct.

9           THE COURT:  All right, so Count One of Indictment

10  20-CR-308 charges you with on or about July 17th, 2020, within

11  the Eastern District of New York and elsewhere, you did

12  willfully with the intent to endanger the safety of any person

13  on board and any person whom you believed would be on board

14  and with reckless disregard for the safety of human life, did

15  damage, disable, destroy, tamper with and attempt to damage,

16  disable, destroy and tamper, with a motor vehicle that was

17  used, operated and employed in interstate and foreign

18  commerce, specifically a New York City Police Department

19  vehicle in Brooklyn, New York in violation of United States

20  law.

21      Do you understand what you have been charged with,

22  Mr. Trapp?

23           THE DEFENDANT:  Yes, I do.

24           THE COURT:  Now, there is a second Indictment

25  bearing the docket number of 20-CR-454.

Proceedings - Via Videoconference                    13

1        And, again, my understanding is that you are

2    pleading guilty to Count One of this Indictment.

3        Counsel, is that correct?

4        MS. WINIK:  Yes, Your Honor.

5        MS. BURRELL:  Correct, Your Honor.

6        THE COURT:  Okay.

7        And that charge reads as follows:  In or about and

8    between June 2020 and July 2020, both dates being approximate

9    and inclusive, within the Eastern District of New York and

10   elsewhere, you, together with others, did knowingly and

11   intentionally devise a scheme and artifice to defraud the

12   Small Business Administration and to obtain money and property

13   from it by means of materially false and fraudulent pretenses,

14   representations and promises; and to execute this scheme you

15   transmitted and caused to be transmitted wire communications

16   in interstate commerce, specifically a fraudulent Economic

17   Injury Disaster Loan application, again, in violation of

18   United States law.

19       Do you understand what you have been charged with in

20   this count, Mr. Trapp?

21       THE DEFENDANT:  Yes, I do, Your Honor.

22       THE COURT:  Okay.  And you have discussed both of

23   these charges with Ms. Burrell, correct?

24       THE DEFENDANT:  Yes.  Yes, Your Honor.

25       THE COURT:  Okay.

Proceedings - Via Videoconference                    14

1          Now, I want to make sure that you understand the

2     rights that you will be giving up if you decide to plead

3     guilty to these charges.

4          If you were to persist in pleading not guilty, under

5     the Constitution and the laws of the United States you would

6     be entitled to a speedy and public trial by a jury with the

7     assistance of counsel on the charges contained in those

8     Indictments.

9          Do you understand that?

10         THE DEFENDANT:  Yes, Your Honor, I truly understand.

11         THE COURT:  At the trial you would be presumed

12    innocent and the Government would have to overcome that

13    presumption and prove you guilty by competent evidence and

14    beyond a reasonable doubt.  You would not have to prove that

15    you were innocent.  If the Government were to fail, the jury

16    would have the duty to find you not guilty.

17         Do you understand that?

18         THE DEFENDANT:  Yes, I understand that.

19         THE COURT:  In the course of a trial, the witnesses

20    for the Government would have to come to court.  They would

21    have to testify in your presence.  Your attorney would have

22    the right to cross-examine those witnesses for the Government,

23    to object to any evidence offered by the Government, and to

24    subpoena witnesses and offer testimony and evidence on your

25    behalf.

Proceedings - Via Videoconference                    15

1        Do you understand that?

2        THE DEFENDANT:  Yes, I understand, Your Honor.

3        THE COURT:  At the trial, while you would have the

4   right to testify if you chose to do so, you could not be

5   forced to testify.  Under the Constitution of the United

6   States, a defendant in a criminal case cannot be forced to

7   take the witness stand and say anything that could be used to

8   show that he is guilty of the crime with which he has been

9   charged.  If you were to decide not to testify, the Court

10  would instruct the jury that they could not hold that decision

11  against you.

12       Do you understand that?

13       THE DEFENDANT:  Yes, I do.

14       THE COURT:  If you plead guilty, on the other hand,

15  I am going to have to ask you certain questions about what it

16  is that you did in order to satisfy myself that you are, in

17  fact, guilty of the charges to which you seek to plead guilty,

18  and you are going to have to answer my questions and

19  acknowledge your guilt.

20       Thus, you will be giving up that right that I just

21  described; that is, the right not to say anything that could

22  be used to show that you are guilty of the crime with which

23  you have been charged.

24       Do you understand that?

25       THE DEFENDANT:  Yes, I do.

Proceedings - Via Videoconference                    16

1          THE COURT:  If you plead guilty and I recommend to

2    Judge Johnson that he accept your pleas of guilty, you will be

3    giving up your constitutional right to a trial and all of the

4    other rights that I have just described.  There will be no

5    further trial of any kind.  Judge Johnson will simply enter a

6    judgment of guilty based upon your guilty plea.

7          Do you understand that?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Okay.

10          Are you willing to give up your right to a trial and

11    the other rights that I have just described?

12          THE DEFENDANT:  (No response.)

13          THE COURT:  Do you understand the question?

14          Are you willing to give up your right to a trial?

15          THE DEFENDANT:  Yeah.

16          THE COURT:  Okay.

17          And in doing so, you are giving up the other rights

18    that we just discussed; the right to remain silent, the right

19    to present evidence.

20          Do you understand that?

21          MS. BURRELL:  Apologies, Your Honor, I think he

22    might have a question at this point.  So, we would like to

23    confer quickly.

24          THE COURT:  I couldn't hear you.

25          MS. BURRELL:  I think Jeremy -- Mr. Trapp has a

1   quick question for me, so I am just going to confer with him

2   quickly.

3           THE COURT:  Oh, of course.  Sorry, I just didn't

4   understand what you said.  Go ahead.

5           (Counsel and the witness confer off the record.)

6           THE COURT:  Ms. Burrell, are we okay?

7           MS. BURRELL:  Yes, we're good, Your Honor.  Thank

8   you.

9           THE COURT:  I am just going to repeat the last

10  question.

11          So, Mr. Trapp, are you willing to give up your right

12  to a trial and the other rights that we have just been

13  discussing?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Now, I understand there is a written

16  plea agreement that I don't have a formal copy of, but I would

17  mark it as Court Exhibit 1 for purposes of these proceedings.

18          (Court's Exhibit 1 was received in evidence.)

19          THE COURT:  Have you seen that plea agreement,

20  Mr. Trapp?

21          THE DEFENDANT:  The plea agreement (Displaying.)

22          THE COURT:  Okay, great.  Have you had a chance to

23  read it?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And did you discuss it with Ms. Burrell?

Proceedings - Via Videoconference                    18

1           THE DEFENDANT:  Yes, I did.

2           THE COURT:  Okay.

3           And do you understand what it says?

4           THE DEFENDANT:  Yes, I do, Your Honor.  I understand

5    what it says.

6           THE COURT:  Okay.  And have you signed it on the

7    last page there?  Is that your signature?

8           THE DEFENDANT:  Yes, that is my signature.

9           THE COURT:  Okay.

10           Does this agreement fully and accurately reflect

11   your understanding of the agreement that you have with the

12   Government?

13           THE DEFENDANT:  Yes.

14           THE COURT:  Other than the promises in the

15   agreement, has anyone made any other promise that has caused

16   you to plead guilty here?

17           THE DEFENDANT:  I'm sorry, I can't hear that

18   question.

19           Can you repeat that again, Your Honor?

20           THE COURT:  Sure.

21           Other than the promises in the agreement, has

22   anybody else made a promise to you that has caused you to

23   plead guilty today?

24           THE DEFENDANT:  Yes -- oh, no, no, no, no.  Whoa, oh

25   my God, that was a mistake.

SAM      OCR      RMR      CRR      RPR

1           THE COURT:  That's okay.  You understand the

2     question, right?

3           I just want to know if anybody has said:  Plead

4     guilty today and we promise you'll get some sort of benefit.

5     Has anybody said that to you?

6           THE DEFENDANT:  No.

7           THE COURT:  Okay, all right.

8           THE DEFENDANT:  No.

9           THE COURT:  All right.

10          Has anyone made any promise to you as to what your

11    sentence will be?

12          THE DEFENDANT:  (No response.)

13          THE COURT:  Has anybody promised you a specific

14    sentence?

15          THE DEFENDANT:  No, Your Honor.

16          THE COURT:  Okay.

17          I now want to discuss with you the sentencing scheme

18    that applies here.  Okay?

19          So, the statute that you are accused of violating in

20    the Indictment 20-CR-308 carries a minimum term of zero years

21    in prison, but a maximum of possibly twenty years in prison.

22          Do you understand that?

23          THE DEFENDANT:  Yes, I do understand that.

24          THE COURT:  Okay.  And the charge in the Indictment

25    20-CR-454 is the same, it carries a minimum term of

1   imprisonment of zero years, but a maximum of up to possibly

2   twenty years in prison.

3           You understand that?

4           THE DEFENDANT:  Yes, I do understand that.

5           THE COURT:  All right.

6           So, now, there are, in effect, what are called

7   sentencing guidelines and those guidelines are merely that, a

8   guide to help the Court determine where within that zero to

9   twenty-year range your sentence should fall.  The guidelines

10  are not mandatory, but the Court is required to consider the

11  guidelines, along with all other relevant factors, in

12  determining what an appropriate sentence for you should be.

13          Do you follow me so far?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Okay.

16          Now, the important thing you must understand is that

17  until the time of sentencing when Judge Johnson is going to

18  get what is called a pre-sentence report, which will be

19  prepared by the Probation Department following your plea here,

20  and the judge then has an opportunity to hear from you and to

21  hear from Ms. Burrell and to hear from the Government, until

22  that time no one can promise you exactly what your sentence

23  will be.  Not Ms. Burrell, not the Government's attorneys, not

24  me, not even Judge Johnson until then.

25          Do you understand that?

Proceedings - Via Videoconference                21

1           THE DEFENDANT:  Yes, I understand that.

2           THE COURT:  Okay.

3           Nevertheless, I am going to ask the Government just

4    to put on the record what your calculation of the guideline

5    range would be under both charges so that Mr. Trapp can

6    understand what your position is.  Okay?

7           MS. WINIK:  Yes, Your Honor.

8           Taking the grouping analysis into account, the

9    Government estimates a guidelines range of 12 to 18 months,

10   assuming the defendant falls into Criminal History Category I,

11   and assuming a minus three points for timely accepting

12   responsibility.

13          THE COURT:  Okay.

14          And, Ms. Burrell, do you have any quarrel with the

15   Government's estimate that you want to put on the record at

16   this point?

17          MS. BURRELL:  No, Your Honor.  We agree with that

18   guidelines calculation.

19          THE COURT:  All right.

20          So, Mr. Trapp, where are you?  There you are, okay.

21          So, you understand that is the Government's estimate

22   of what they think your guideline range would be.  It may be

23   that once the Probation Department prepares its report and the

24   judge reads the report, a different guideline range might be

25   appropriate.  If that happens, you understand you will not be

Proceedings - Via Videoconference          22

1    allowed to withdraw your guilty plea.

2              Do you understand that?

3              THE DEFENDANT:  Yes, I understand that.

4              THE COURT:  Okay, all right.

5              Now, you also understand that as a result of your

6    plea you face a term of supervised release.

7              Do you know what supervised release is?

8              THE DEFENDANT:  That means Probation comes to check

9    up on you.  You're being watched, that's what it means.

10             THE COURT:  That's pretty much right.  So, you will

11   be released from jail once you have completed your sentence,

12   and at that point you will be subject to supervision, normally

13   by a probation officer, and there will be certain restrictions

14   placed on your freedom.  Reporting to the probation officer is

15   one common example.

16             Do you understand that?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Okay.

19             As a result of your plea to these charges, you face

20   a term of supervised release of three years, and if you

21   violate any of the conditions of supervised release you can be

22   sentenced up to two years in prison without getting any credit

23   for the time that you previously served in prison and without

24   getting any credit for the time that you served successfully

25   on supervised release up until the date that you committed the

1  violation.

2          Do you understand that?

3          THE DEFENDANT:  Yes, Your Honor, I understand that.

4          THE COURT:  Okay.  You also face potential fines

5  under both counts.  The maximum fine under each count is the

6  greater of $250,000 or the gross gain or gross loss.

7          Let me ask the Government, do you have any estimate

8  of what that gross gain or loss might be?

9          MS. WINIK:  Your Honor, at this point we would

10  assume that it would be the greater of $250,000 would apply as

11  the maximum fine here.

12          THE COURT:  Okay, all right.

13          You understand that, Mr. Trapp?

14          THE DEFENDANT:  Yes, I do.

15          THE COURT:  Okay.  And you also may have to pay

16  restitution.

17          Again, does the Government have an estimate of what

18  that might be?

19          THE DEFENDANT:  I have no idea.

20          MS. WINIK:  I don't at this time, Your Honor, have

21  an estimate, but I will note that the defendant was charged

22  with stealing approximately $52,500 from the Government.

23          THE COURT:  Okay.  Well, so we don't know exactly

24  what the restitution might be, but that gives you some sort of

25  a sense.

1          Do you understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Okay.

4          And finally, you are required to pay a

5   one-hundred-dollar special assessment for each count, for a

6   total of $200.

7          Do you understand that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Okay.

10          Now, the other thing you must understand is that the

11   sentences under the two different indictments can be imposed

12   consecutively.

13          Do you know what that means?

14          THE DEFENDANT:  You have to do the time --

15          THE COURT:  Go ahead.

16          THE DEFENDANT:  You have to do the time and then you

17   have to wait and do the other time.

18          THE COURT:  Okay, that's right.  You might be

19   sentenced to ten years on Count One and ten years on the other

20   Indictment, and you complete the ten years and then you would

21   start the next ten years.

22          I'm not saying ten years is the number, I'm just

23   using ten years as an example.

24          You understand?

25          THE DEFENDANT:  Yes, I do.

1          THE COURT:  Okay, all right.

2          Now, you also understand that you can appeal your

3    conviction if you believe that your guilty plea here was

4    somehow unlawful or involuntary or there was some other

5    fundamental defect in these proceedings that was not waived by

6    your plea.

7          You also have a statutory right to appeal your

8    sentence under certain circumstances if you believe that your

9    sentence is contrary to law.

10          Unfortunately, my computer has now frozen, so what I

11    was going to say is that he has agreed not to appeal his

12    sentence so long as the Court imposes a term of imprisonment

13    of what?  I can't get my computer to work.

14          MS. WINIK:  Your Honor, according to the plea

15    agreement, it's 21 months or below.

16          THE COURT:  Okay.

17          So, you understand that you cannot appeal as long as

18    the judge imposes a sentence of 21 months or less?

19          Do you understand that?

20          THE DEFENDANT:  Yes, I understand that.

21          THE COURT:  Okay.

22          All right, is there anything else in the plea

23    agreement that I should advise the defendant of?

24          MS. WINIK:  Not from the Government, Your Honor.

25          THE COURT:  Ms. Burrell.

Proceedings - Via Videoconference                26

1        MS. BURRELL:  The plea agreement also includes that

2   the Government will not be asking for an upward departure of

3   the sentencing guidelines.

4        THE COURT:  Okay.  Is that correct, counsel?

5        MS. WINIK:  Yes, Your Honor.

6        THE COURT:  Ms. Winik, okay.

7        Mr. Trapp, come back.

8        Okay, you understand what Ms. Burrell just said?

9        THE DEFENDANT:  Yes.

10        THE COURT:  Okay.

11        All right, okay, do you have any questions that you

12   would like to ask me about the charges or your rights or the

13   plea agreement or anything else before we proceed in?

14        MS. BURRELL:  Any questions?

15        THE COURT:  Do you have any questions?

16        THE DEFENDANT:  Do I have any questions?  I have to

17   plead guilty.

18        MS. BURRELL:  Okay, so tell her.

19        THE COURT:  No questions?

20        THE DEFENDANT:  No.

21        THE COURT:  Okay.

22        All right, are you ready to plead at this time?

23        THE DEFENDANT:  Yes.

24        THE COURT:  Counsel, do you know of any reason why

25   the defendant should not plead guilty?

Proceedings - Via Videoconference                    27

1              MS. BURRELL:  No, Your Honor.

2              THE COURT:  Are you aware of any viable legal

3    defense to the charges?

4              MS. BURRELL:  No, Your Honor.

5              THE COURT:  All right.

6              Jeremy Trapp, what is your plea to the charge

7    contained in Indictment 20-CR-308, guilty or --

8              THE DEFENDANT:  Guilty.

9              THE COURT:  -- not guilty?

10             THE DEFENDANT:  Guilty.

11             THE COURT:  What is your plea to the charge

12   contained in Indictment 20-CR-454, guilty or not guilty?

13             THE DEFENDANT:  Guilty.

14             THE COURT:  Are you making these pleas of guilty

15   voluntarily and of your own free will?

16             THE DEFENDANT:  What does that mean?  What does that

17   mean, if I'm pleading guilty to both charges?

18             THE COURT:  Yes.

19             And are you doing this freely, based on your own

20   free will, voluntarily, nobody is --

21             THE DEFENDANT:  Yes.

22             THE COURT:  -- is forcing you to do this, correct?

23             THE DEFENDANT:  Yes, I'm pleading guilty.

24             THE COURT:  Okay.

25             Has anyone threatened you or forced you to plead

Proceedings - Via Videoconference                28

1   guilty?

2           THE DEFENDANT:  No.

3           THE COURT:  Okay.

4           Now, I read the charge to you a few minutes ago.

5   Let's take the charge in Indictment 20-CR-308 first.  That's

6   the one endangering the safety of the people in the police

7   vehicle.

8           Can you tell me in your own words what did you do?

9           THE DEFENDANT:  On July 17th, 2020 I knowingly

10  damaged an NYPD police van.  I cut a wire underneath the van.

11  This took place in Brooklyn, New York.

12          THE COURT:  Okay.

13          Anything I should ask, Ms. Winik, further on that

14  charge before I move to the next one?

15          MS. WINIK:  Your Honor, the Government would just

16  proffer that the vehicle, the NYPD damaged vehicle was used,

17  operated and shipped in interstate commerce.

18          THE COURT:  All right.

19          So, turning to Indictment 20-CR-454, Mr. Trapp, can

20  you tell me what you did in connection with the Small Business

21  Administration loan?

22          THE DEFENDANT:  Okay, wire fraud.  During the summer

23  of 2020, which that was last year, I applied for a loan from

24  the Small Business Association, I filled out a paper work --

25          THE COURT:  Start over because the court reporter

Proceedings - Via Videoconference          29

1  missed some of it.

2           THE WITNESS:  Okay, no problem.

3           THE COURT:  Thank you.

4           THE WITNESS:  During the summer of 2020, which that

5  was last year, I applied for a loan from the Small Business,

6  yes, the SBA.  I filled out a paper work where I made false

7  statements and representations about a car washing business.

8  I received money in my bank account for this loan.  Again,

9  this took place in Brooklyn, New York.

10          THE COURT:  Okay.

11          And what is the Government's proffer with respect to

12  the use of interstate wires?

13          MS. WINIK:  The Government would proffer that the

14 Economic Injury Disaster Loan program application that the

15 defendant submitted through an online portal was routed

16 through servers in Iowa and processed in Texas and, thereby,

17 used interstate wires.

18          THE COURT:  Okay.

19          So, Mr. Trapp, is that fair to say that you

20 submitted your application by computer?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Okay.

23          MS. WINIK:  Your Honor.

24          THE COURT:  Yes, go ahead.

25          MS. WINIK:  I would also ask that Mr. Trapp say the

Proceedings - Via Videoconference          30

1  false information that he -- I know he mentioned a car wash

2  business, but say the false information that he put in the

3  application.

4           THE COURT:  What was false about your application?

5           THE DEFENDANT:  I put in a false application.  Like,

6  I put in that I was -- that I had ten -- I had a maximum of

7  ten employees, a gross of $150,000 that I -- that I -- that I

8  lied about and applied for a loan.  And then I got like

9  42,000, and then an extra 10,000 wired.

10          THE COURT:  Okay.  And did you have a car wash at

11 all?

12          THE DEFENDANT:  No.

13          THE COURT:  Okay.

14          All right, anything else I should inquire of the

15 defendant at this time?  Ms. Winik?

16          MS. WINIK:  I would just say that when Mr. Trapp

17 said the summer, it would be June and July 2020; but nothing

18 else from the Government.

19          THE COURT:  Is that correct, Mr. Trapp, June and

20 July of last year?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Okay.

23          Ms. Burrell, anything I should inquire further of

24 your client?

25          MS. BURRELL:  Nothing further, Your Honor.

Proceedings - Via Videoconference                    31

1          THE COURT:  All right.

2          Based on the information given to me, I find that

3    the defendant is acting voluntarily, fully understands his

4    rights and the consequences of his plea, and that there is a

5    factual basis for the pleas to both counts.

6          I will, therefore, recommend to Judge Johnson that

7    he accept your plea of guilty to Count One in Indictment

8    20-CR-308 and to Count One in 20-CR-454.

9          What happens next, Mr. Trapp, is you are going to

10   meet with someone from the Probation Department to prepare

11   that pre-sentence report that we talked about a little bit

12   earlier.  I urge you to cooperate with them; obviously, with

13   Ms. Burrell's advice.

14         And I don't know, Chloe, did Judge Johnson set a

15   date for sentencing yet?

16         THE COURTROOM DEPUTY:  I don't see it.

17         THE COURT:  Well, stay in touch with your attorney

18   because, hopefully, the judge will set a date shortly.  Okay?

19         THE DEFENDANT:  No problem.

20         THE COURT:  All right.

21         THE DEFENDANT:  I will.

22         THE COURT:  All right, everyone, unless there is

23   anything else, I wish you all a good day.  Okay?

24         Thank you.

25         MS. BURRELL:  Thank you, Judge.

Proceedings - Via Videoconference                32

1          MS. WINIK:  Thank you, Judge.

2          THE DEFENDANT:  I pleaded guilty.

3          THE COURT:  Thank you.

4          (Matter adjourned.)

5          (All parties disconnected.)

6

7

8

9

10                    *     *     *     *     *

11

12     I certify that the foregoing is a correct transcript from the
       record of proceedings in the above-entitled matter.

13

14        /s/ Stacy A. Mace                    April 30, 2021
       _____      _____
15        STACY A. MACE                        DATE

16

17

18

19

20

21

22

23

24

25

SAM       OCR       RMR       CRR       RPR